JOHN WILLIAM COYLE et al., complainants-respondents,

*v.*

ELIZABETH C. DONALDSON et al., executrices, defendants-appellants.

[Submitted June term, 1919. Decided November 17th, 1919.]

1. The words in the will of James Coyle, "the coal business now owned by me" pass and include, not only the good-will of the business, the lease-hold interest of the land on which the coal business was conducted, the horses, wagons and other equipment used by the testator, in carrying on the business of coal merchant, but in addition thereto, coal on hand, cash and checks, cash on deposit in check account "James Coyle Coal," difference between bills receivable and payable, *i. e.*, for coal sold and delivered.

2. The meaning and intention of the testator must be determined, not by fixing the attention on single words in a will, but by considering the entire will and surroundings of the testator, when he executed the will, and by ascribing to him, so far as his language permits, the common impulses of our nature.

3. The word "business" is a word of extensive signification. It is an uncertain and equivocal expression.

———

On appeal from the court of chancery advised by Vice-Chancellor Griffin, whose opinion is reported in *90 N. J. Eq. 122*.

*Mr. John Francis Gough,* for the respondents.

*Mr. James A. Gordon* and *Mr. John J. Fallon,* for the appellants.

The opinion of the court was delivered by

BLACK, J.

The bill of complaint in this case was filed in the court of chancery to obtain, among other things, a construction of the meaning of two clauses in the last will of James Coyle, deceased. The only point, however, involved in this appeal is the meaning of the words or the phrase in the fourteenth clause of the will "the coal business now owned by me," bequeathed to the testator's grandson James W. Coyle, Jr., and his daughter Elizabeth C. Donaldson.

The learned vice-chancellor, before whom the case in the first instance was heard, reasoning from analogy, decided the words included only the good-will of the business, the leasehold interest of the land on which the coal business was conducted, the horses, wagons and other equipment used by the testator in carrying on the business of coal merchant. We think this construction is too narrow. These words or this phrase in the will include in addition thereto the following items: Coal on hand, valued at seven thousand fifty-four dollars and thirty-eight cents ($7,054.38); cash and checks, seven hundred and seventy-five dollars and thirty-four cents ($775.34); cash on deposit in check account "James Coyle Coal," one thousand nine hundred and seventy-eight dollars and twelve cents ($1,978.12); difference between bills receivable and payable, *i. e.,* for coal sold and delivered, five thousand eight hundred and seventy-three dollars and seventy-three cents ($5,873.73); total in dispute, fifteen thousand six hundred and eighty-one dollars and fifty-seven cents ($15,681.57). Whether such was the testator's meaning and intention, to use the language of this court, as written by Mr. Justice Dixon, in the case of *Torrey* v. *Torrey, 70 N. J. Law 673,* must be determined, not by fixing the attention on single words, but by considering the entire will and the

surroundings of the testator, when he executed the will, and by
ascribing to him, so far as his language permits, the common im-
pulses of our nature. If we put ourselves in the position of the
testator, at the time of the execution of the will, and consider
the circumstances he had in view in making the will, it seems
quite clear, that the coal business was to pass, as it was then
owned by the testator, as a whole, with all that pertained to it,
as a going concern or business. Neither one of these two legatees
had any means whatever, except what they received under the
provisions of the will, and no one, perhaps, knew better than the
testator himself that such a business could not be carried on suc-
cessfully without some capital. To assume that the testator in-
tended or desired to separate the stock from the business, in
which it was more valuable than it possibly could be in the pos-
session of the executrices, is both unnatural and unreasonable.
The respondent, who is a son and one of the heirs-at-law, is enti-
tled to one-third of the residuary. The sum bequeathed to him
by the testator under the terms of the will was given, "at such
times and in such amounts as the executors may determine to be
proper." If these items now in dispute go into the residuary, the
son would receive a substantial amount unhampered by any con-
dition, whereas, all that he receives under the will is carefully
guarded by the testator; such a result, it is reasonable to presume,
would not have been intended by the testator. Then, too, the
grandson and legatee, John W. Coyle, Jr., had been employed
by the testator in the coal business since leaving school, in 1909,
to the satisfaction and with the confidence of the grandfather
and testator; to separate the coal business into separate parts
would impair its value at least to some extent; such a result it is
not reasonable to presume was either desired or intended by the
testator, when he used the words "the coal business now owned
by me" in his will.

The definition of the word "business," or the construction
given to it by the courts in other cases, is of little aid in ascer-
taining the intention of the testator in this case. The word is an
uncertain and equivocal expression. *In re Weber's Estate, 261
Pa. St. 561, 569; 104 Atl. Rep. 735; Widdall v. Garsed, 125
Pa. St. 358, 361.* It is a word of extensive signification under

any legal or general definition of the term. *White* v. *Rio Grande Western Ry. Co., 25 Utah 346, 349.* A word of large signification. *Goddard* v. *Chaffee, 84 Mass. 395.*

The word "business" in a contract not only includes the good-will of the business, but the money in bank and cash on hand, which came from the sale of goods, so held in *McGowan* v. *Griffin, 69 Vt. 168.* This court held that, where a testator orders his business, "brewing business," to be carried on after his death, the funds employed in the business before his death are answerable to the subsequent creditors. *Laible* v. *Ferry, 32 N. J. Eq. 791, 798.*

The decree of the court of chancery is reversed and the case is remanded to that court, to enter a decree in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.