MARGARET A. ROWLEY et al., complainants,

*v.*

NORMAN CURRIE et al., defendants.

[Decided April 9th, 1923.]

1. A clause in a will dividing two-thirds of testator's estate equally among such of his heirs as would take if testator died intestate, and also to Mrs. R. and her children, gave one share to each of said heirs and one share each to the members of Mrs. R.'s family, there being no other provisions in the will expressing a contrary intention.

2. Except in an entirely plain case, the court will not construe a will so as to cut off from inheritance or benefit any direct descendant of the testator.

3. Where the direction in a will is that the estate shall go in equal shares, those who take by representation take *per capita*.

4. The word "children" in a will is a word of personal description, limited to persons standing in the same relations, and has the same effect as if all the names were given.

On bill, &c.

*Messrs. Wakelee, Thornall & Wright* and *Mr. Le Roy E. Vander Burgh,* for the complainants.

*Messrs. Morrison, Lloyd & Morrison* and *Mr. Guernsey Price* (of the New York bar), for Margaret A. Rowley and her three children.

*Mr. Clifford Chalmer* (of the New York bar) and *Mr. Jason R. Elliott,* for the Leamon defendants.

*Messrs. Reed, Hetfield & Crane,* for Norman W. Currie et al., defendants.

LEWIS, V. C.

The bill in this suit was filed by the executors and trustees under the will of Daniel A. Currie against the nephews and others of blood of said Daniel A. Currie for the purpose of having determined the distribution of the residuum of the estate of Daniel A. Currie and for instructions from the court as to certain matters connected with their duties as executors and trustees.

At the conclusion of the hearing, and upon final argument, it is my recollection that all the questions in dispute as to the various clauses in the will were disposed of save one. This was the question arising over the second clause of paragraph 23 of the will which reads as follows:

"Two-thirds of my said estate less one-twentieth leaving nineteen-thirtieths (19/30s) of my said estate to be divided equally, share and share alike, among such of my heirs as would have taken, excepting Agnes Ferguson and her heirs, as would have taken under the laws of the State of New Jersey had I died intestate, and also to Mrs. Margaret A. Rowley and her children."

The testator, who lived in Englewood, died February 28th, 1911. A large part of his estate was left in trust for his wife and his sister for life and for Mrs. Rowley for three years after his death. Mrs. Rowley, with her three children, went to live with Dr. Currie in 1903 as housekeeper at the large house owned by him in Palisade avenue, Englewood. They continued to live there until the doctor's death in 1911. Mrs. Rowley nursed Dr. Currie for months in his last illness. The testimony is that Dr. Currie's wife was mentally incompetent and that this was the reason for installing Mrs. Rowley in his home. He made ample provision for his wife and his sister as long as they lived. His sister died October 6th, 1912. His wife died February 28th, 1918, and the time has now arrived for the distribution of the residuary estate. As before stated, the only question which I am now called upon to decide is how much of the residuary estate do each of the members of the Currie and Rowley families take under the second paragraph of the twenty-third subdivision of the will above quoted. The persons now interested in the construction of this part

of the will are seven nephews and nieces of the testator, three children of a nephew who predeceased him, and Mrs. Rowley and her three children.

The heirs and next of kin at the time of the death of Dr. Currie were:

1. Elizabeth Jane Currie, sister, who died October 6th, 1912.

2. Fannie M. Currie, wife, who died February 28th, 1918.

3. Norman, Thomas, John, Orange J. and William Currie, children of John Currie, a deceased brother.

4. Elena Lockhead, daughter of Margaret Van Slyke, a deceased sister.

5. Agnes Ferguson, daughter of Robert Currie, a deceased brother.

6. Ralph, Agnes and Marion Leamon, children of Augustus Leamon, a son of Mary Leamon, a deceased sister of the testator.

All of these persons were living at the time the will was made and there has been no change since that time. Agnes Ferguson, another niece of the testator, died December 13th, 1915, but, as she and her heirs were expressly excluded from the participation in the distribution of this fund, her death does not affect the result.

This is a brief summary of the will of Dr. Currie.

    I. Debts to be paid.

    II. Personal effects to nephews; William A. Rowley named erroneously as one of the nephews.

    III. Harness, horse, &c., to associate, Dr. Phillips.

    IV. Medical library; specific legacies.

    V. Trusts for cemeteries.

    VI. Specific legacy of $3,000 to Mrs. Rowley

"in recognition of faithful services rendered me and my household during my prolonged illness, the same ·to be paid to her within thirty days after the probate of this my Last Will and Testament; and in case it be found that funds are not available to pay the whole amount within the time specified then so much thereof as are available be paid her and the balance without delay, when my estate becomes in funds."

VII. Provision for the education of Dorothy Rowley.

VIII. The residuum in trust for the support of his wife and sister, Mrs. Rowley being one of the trustees.

IX. Real estate directed to be sold at auction.

X. House at Dwight place and Palisade avenue, Englewood, a home for 'wife and sister. This clause adds provision for Mrs. Rowley, saying:

"It is my wish, and I hereby direct, that Mrs. Margaret A. Rowley shall continue as now the custodian of the domestic management of my home, as I have every confidence in her honesty and ability."

XI. Provision of $50 a month for Mrs. Rowley

"for her personal services as long as she is the custodian of my home and looks after the domestic welfare of my wife and sister or either one of them as hereinbefore provided."

XII. Provision that while Mrs. Rowley is custodian her daughters shall reside with her until they become twenty-one years old without charge, and the son, William Rowley, may reside with her, paying monthly board to the satisfaction of the executors.

XIII. "THIRTEENTH; It is my wish and desire that my executors have Mrs. Margaret A. Rowley appointed the legal guardian of my wife as soon as possible after my decease."

XIV. Provision for wife in lieu of dower.

XV. After death of wife and sister, *bric-a-brac* to specific legatees.

XVI. Upon death of wife, certain specific legacies, as follows:

"Alida Lochhead .................................... $1,000.00
To William A. Rowley, Margaret A. Rowley and Dorothy M. Rowley, the sum of two thousand dollars ($2,000) each, six thousand dollars ($6,000) said sums to be held by their mother at her personal option, for investment for their use.............. 6,000.00

39

To the descendants of my nephew Augustus Lemon, of
    Saddle River, New Jersey, three thousand dollars
    ($3,000) to be divided among them in the same
    shares and proportion as such descendants would in-
    herit from his estate should he die intestate....... 3,000.00
Norman Currie .................................... 2,000.00
John A. Currie ................................... 2,000.00
Orange Judd Currie ............................... 2,000.00
Daniel A. Currie, Jr.............................. 1,000.00
William Currie ................................... 2 000.00
Thomas Currie .................................... 2,000.00
Robert A. Currie ................................. 2,000.00
Agnes Ferguson ................................... 500.00
Reverend John Lochhead ........................... 500.00
Dr. S. Justina Ermentrout ........................ 500.00

                                    $17,500.00"

XVII. Five hundred dollars ($500) to Daniel A. Currie
    Beattie.

XVIII. Trust for William Buchanan, coachman.

XIX. Three thousand dollars ($3,000) to St. Paul's
    Episcopal Church, Englewood.

XX. Provision for twenty-five per cent. to Mary Hughes
    Armstrong (Mrs. Rowley's sister) of the net
    profits on the sale of lands.

XXI. Provision regarding fund out of which moneys are
    to be paid.

XXII. Provision regarding cemetery lot being used by Mrs.
    Rowley and her immediate family.

XXIII. This is the clause chiefly under discussion in this
    suit. It provides, after the death of both wife
    and sister, for the use by Mrs. Rowley of the
    residuum of the estate for three (3) years. It
    then provides—

"Two-thirds of my said estate less one-twentieth, leaving nineteen-
thirtieths (19/30) of my said estate to be divided equally, share and
share alike, among such of my heirs at law excepting Agnes Ferguson
and her heirs as would have taken under the laws of the State of
New Jersey had I died intestate and also to Mrs. Margaret A. Rowley
and her children."

It then provides that an undivided one-twentieth of two-thirds is to be divided equally among various persons named, and then provides that the remaining one-third of the residuum shall go to the State Grand Lodge of Masons for New Jersey, to be applied to the support and maintenance of the present or any future Masonic House established or to be established by said Grand Lodge.

XXIV. Bequest with reference to advance to one John N. Leamon.

XXV. Appointment of executors and trustees, Mrs. Rowley being the first named.

It is contended, in behalf of the nieces and nephews and the children of the deceased nephew, that this paragraph should be construed to give one share of the fund to each of the seven nephews and nieces, one share to each of the three children of the deceased nephew, and one share to each of the four members of the Rowley family, viz., one-fourteenth of the fund to each.

Counsel for the Rowleys contend that the testator meant two classes, the heirs comprising one class and the Rowleys the other—that each take one-half of the nineteen-thirtieths. The cases cited in their behalf and immediately referred to, in my judgment, do not sustain this contention.

In *Wintermute* v. *Exr. of Schneider, 3 N. J. Eq. 489,* the chief question involved was whether under a bequest to William Schneider and his heirs the father took the legacy, or whether his children were entitled to any part of it. The court held that the children were not entitled to it and the legacy went to the father.

In *Stoutenberg* v. *Moore, 37 N. J. Eq. 63,* cited, the question was whether the children of the testator's two sons took *per stirpes* or *per capita* and the division turned upon the use of the word "between" by the testator.

The will reads:

"All the rest, residue of my estate, real, personal and mixed, I give, devise and bequeath the income to my sons, Robert and Edward, to be equally divided between them during their lives, and at their death to be equally divided between my grandchildren."

Chancellor Runyon, referring to the use of the word "between," says: "Nor is the word 'between' in this will without significance." The language is "and at their death to be equally divided between (not among) my grandchildren." The word "between" is usually used in reference to two only and there is some evidence in the use of the word here of an intention to divide between two families of children. The chancellor decided that the children of each son take their father's share at his death.

The testimony given in behalf of the Rowleys which is offered to sustain their claim, some of which was objected to as incompetent and irrelevant, it is not necessary to consider to ascertain the intention of the testator with respect to the Rowleys. This is clearly ascertainable from an examination of the will itself.

Among the provisions that he made for them in addition to the one now under consideration are:

The second paragraph of his will in the gift of personalty includes William R. Rowley and calls him a nephew.

In paragraph 15 of his will he gives his furniture, china, silverware, &c., to Mrs. Rowley and her three children and his nephew, naming all by name, to be divided share and share alike.

In paragraph 16 he gives William, Mary and Dorothy, children of Mrs. Rowley, two thousand dollars ($2,000) each, the same amount that he gave to each of the sons of his own blood and his nephews. To Mrs. Rowley he gives three thousand dollars ($3,000) in recognition of faithful services.

Paragraph 6 provides for a college education for her daughter, Dorothy.

In paragraph 10 he makes Mrs. Rowley the custodian of his home, with all the expenses provided.

In paragraph 11 he gives her fifty dollars ($50) a month for her services.

And in the twelfth paragraph he provides that her daughters may live at his home without expense until they reach the age of twenty-one years.

In paragraph 13 he makes her the guardian of his wife.

In paragraph 22 he gives her, for herself and family, a two-thirds interest in his burial plot in Brookside cemetery and the right to have her and her children's names on his monument.

In paragraph 23, after the death of his wife and sister, he gives her the whole income of his estate for three years and then makes the distribution under consideration of nineteen-thirtieths among his heirs, save Mrs. Ferguson and Mrs. Rowley and her children.

No argument is necessary after reading these paragraphs in the will to convince one of his regard for the Rowleys, but, furthermore, there is no indication from the will that he intended to divide, under the twenty-third paragraph, his residuary estate into two classes and thus prefer the Rowleys to his own kin.

Except in an entirely plain case the court will not construe a will so as to cut off from inheritance or benefit any direct descendant of a testator. *Brooklyn Trust Company, 196 App. Div. (N. Y.) 355.*

While this will is somewhat inexpertly drawn, it seems clear to me that the intention of the testator was to put Mrs. Rowley and her children in the same class with his heirs and treat them as a unit in the will.

The use of the word "among" and "also," as appears in paragraph 23, are significant as showing that the testator intended one class. The Rowleys not being heirs, he uses the phrase "and also Mrs. Rowley and her children" to bring them into the class to share in the fund with his heirs and provides that it is to be divided equally, share and share alike "among" them. The will does not say that the residuary estate shall be divided "between" the testator's heirs and Mary A. Rowley and her children; but it says it shall be divided "among" testator's heirs, except Agnes Ferguson and her heirs. If the testator intended a division between the

heirs and the Rowleys he would not have said "among." The word "between" is commonly used in reference to two only. Had he intended one-half of the said portion to go to the heirs and the other half to the Rowleys, the extent of the will signifies that he would have said so in certain terms, as such calculation into halves would have been easy as compared to the computation made by the deceased.

Where the direction of a will is that it shall go to them in equal shares, those who take by representation take *per capita. Welch* v. *Crater, 32 N. J. Eq. 180-181.*

The words "and also to Margaret A. Rowley and her children" were essential because they were not heirs of the testator. The word "also" would not have been used had Dr. Currie meant to create a separate class for Mrs. Rowley and her children. Webster defines the word "also" as "in the same manner (as something else)." The words "and also Mrs. Rowley and her children" he used the word "children" as a description instead of stating their several names. *2 Words and Phrases 1137.* As words of description in law the word "children" has, and has had, a well defined meaning which is found to run through the text-books and reports and upon the proper adherence to which the stability and very existence of many titles in the commonwealth depend. Defining it from a positive standpoint, it is a word of personal description. It points to individual acquisition. So far as description goes it differs in no way from a mention of individuals by name, &c. *Crawford* v. *Forest Oil Co., 77 Fed. Rep. 534-6.*

"Children" is ordinarily used as a word of description limited to persons standing in the same relations and has the same effect as if all their names had been given, &c. *Balcum* v. *Hayner, 96 Mass. 204-5.*

In *Bisson* v. *West Shore Railroad, 66 Hun (N. Y.) 604; affirmed, 143 N. Y. 125,* the court says "this being a devise to a class and the direction being that the estate shall be divided equally, or share and share alike, the members of the class take *per capita."* In this case the testator devised and bequeathed the remainder of his estate, after the death or

remarriage of his wife, "unto my heirs and my wife, Maria Bernhardina's heirs, their heirs and assigns forever, share and share alike." The court said, "this being a devise to a class, and the distinction being that the estate shall be divided equally, or share and share alike, the members of the class take *per capita,* there being nothing in the will to show a contrary intention." The court continued, "we think the testator intended to make but one class composed of his own and of his wife's heirs and intended they should share alike in the premises." This is my view of Dr. Currie's intention in making disposition of his estate under the second clause of the twenty-third paragraph of his will. He desired to place the Rowleys in the same class with his heirs (all in one class), and under this paragraph the fund should be divided share and share alike and the members of the class take *per capita.*

A decree may be accordingly entered.